IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREEN DOLPHIN CAPITAL LLC, MK 2011 LLC, TM 2011 LLC, and GARY RAPPEPORT as trustee of the GARY RAPPEPORT TRUST, | Case No. 19-cv-06940 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and JPMORGAN CHASE & CO. d/b/a JPMORGAN PRIVATE BANK, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Green Dolphin Capital, MK 2011 LLC, TM 2011 LLC, and Gary Rappeport bring suit against Defendants JPMorgan Chase Bank, N.A., J.P Morgan Securities LLC, and JP Morgan Chase & Co. d/b/a JPMorgan Private Bank (collectively "JPMorgan") on claims of negligent misrepresentation and breach of fiduciary duty under Illinois law. Before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). [16] For the following reasons, Defendants' motion is granted.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint and are accepted as true for purposes of the present motion. Plaintiffs are affiliated entities of Far Horizons Capital LLC, a family office investment management firm, and are

1

JPMorgan Private Bank clients. (Dkt. 1 Exhibit 1 at ¶ 1; 12). JPMorgan's Private Bank offers its clients "personalized advice and best-in-class service" regarding a "wide range of distinct [investment] opportunities." (*Id.* at ¶ 14) (internal quotations omitted). It "also provides its Private Bank clients access to its institutional investment platforms, which includes information regarding direct private placement …." (*Id.* at ¶ 15). One such investment opportunity JPMorgan presented to Plaintiffs was Watford Holdings Ltd. ("Watford") (*Id.* at ¶ 21). Watford is a combination of Arch Capital Group Ltd. ("Arch"), a reinsurance business, and Highbridge Principal Strategies, LLC ("Highbridge"), a hedge fund investment business. (*Id.* at ¶ 17). At the time, Highbridge was owned by JPMorgan or one of its affiliates. (*Id.* at ¶ 20). Plaintiffs allege that "JP Morgan planned and created the Watford investment opportunity" and "then solicited, promoted, and marketed investments in Watford …" to its JPMorgan Private Bank clients, including Plaintiffs. (*Id.* at ¶¶ 19; 21; 23).

As part of their efforts to market Watford to Plaintiffs, JPMorgan provided information to Plaintiffs regarding the Watford investment and its business plan through an Investment Presentation. (*Id.* at ¶ 26).[1] The Investment Presentation explained that "Watford's operating model was to generate underwriting profits from its portfolio of reinsurance contracts and invest those profits, along with the premiums collected from the reinsurance contracts, in a portfolio of investments, which would generate additional returns." (*Id.* at ¶ 30). Thus, "key to the investment was predictable profitability from the Arch reinsurance side of the business." (*Id.* at

---

[1] The Investment Presentation is attached to the Complaint as Exhibit A.

2

¶ 33). An illustration in the presentation indicated that Watford aimed to achieve a target combined ratio of 95% for its Arch business. (*Id.* at ¶ 35). A combined ratio measures the profitability of a reinsurance company, with a combined ratio of less than 100% indicating profitability. (*Id.* at ¶¶ 36-37). Thus, a 95% targeted combined ratio represented a profitable reinsurance business. (*Id.* at ¶ 38). Plaintiffs claim that "[t]he high likelihood of profitability of Watford's reinsurance business was conveyed throughout JPMorgan's Investment Presentation." (*Id.* at ¶ 39). For example, the presentation indicated that Arch had an average combined ratio of 84% over the past ten years and that "Watford's reinsurance portfolio would be even more conservative than Arch's," and hence, "able to write attractive business that does not meet the underwriting return hurdles for reinsurers with more traditional investment portfolios[.]" (*Id.* at ¶¶ 39; 42). The Investment Presentation explained that the "investment period was anticipated to be short, as Watford intended to make an initial public offering ("IPO") of Watford within twenty-four to thirty-six months of its launch." (*Id.* at ¶ 43).

In addition to the Investment Presentation, JP Morgan representatives had multiple meetings and conference calls with Gary Rappeport, Far Horizon's CEO, regarding the Watford investment. (*Id.* at ¶ 44). During these meetings and calls, "JPMorgan repeatedly emphasized that the target combined ratio for Watford's reinsurance business was 95% and that there was a high degree of likelihood that Watford would achieve the 95% combined ratio because Watford would take a more conservative approach to underwriting …." (*Id.*)

On February 25, 2014, Plaintiffs invested $5,000,000 in Watford. (*Id.* at ¶ 49). Plaintiffs claim they relied on the information provided to them by JPMorgan in making this decision. (*Id.* at ¶ 46). Since its launch, Watford's reinsurance business has never been profitable and has operated at a loss each year. (*Id.* at ¶ 50). Consequently, after initiating its IPO on March 28, 2019, Watford has traded at a 30-55% discount from Plaintiffs' original investment. (*Id.* at ¶¶ 61-62). Plaintiffs claim to have lost approximately 40% of their investment in Watford. (*Id.* at ¶ 63).

On September 16, 2019, Plaintiffs filed the present Complaint in state court alleging common law claims of negligent misrepresentation and breach of fiduciary duty against JPMorgan. (Dkt. 1). The case was removed to federal court. (*Id.*) Plaintiffs claim that "JPMorgan was negligent and/or careless in ascertaining the truth of its statement[s] regarding the likelihood that Watford would generate reinsurance underwriting profits in the early stages" and breached its fiduciary duties toward Plaintiffs by making such statements when in fact, "it was highly unlikely if not impossible, that the reinsurance business would be profitable during the early stages of Watford's business" due to certain structural impediments. (Dkt. 1 Exhibit 1 at ¶¶ 69-70; 81-82).

## **LEGAL STANDARDS**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to

4

relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)).

## ANALYSIS

### A. Group Pleading

Defendants argue that Plaintiffs' Complaint must be dismissed because it lumps the Defendant JPMorgan affiliates together as "JPMorgan" without specifying which conduct is attributed to which corporate defendant. Under Federal Rule of Civil Procedure 8, collective pleading is permissible so long as the complaint places each defendant on notice of why they are being sued. *Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016).

Although the Complaint does not specify which Defendant entity gave the Investment Presentation or spoke with Plaintiffs regarding the Watford investment,

5

the Court finds that Plaintiffs have alleged enough at this stage to place each Defendant on notice of why it has been sued. The Investment Presentation, attached to Plaintiffs' Complaint as Exhibit A,[2] attributes a copyright to Defendant J.P, Morgan Chase & Co, purports to be prepared by Defendant J.P. Morgan Securities, LLC, and refers to Defendant JPMorgan Chase Bank, N.A. (Dkt. 40 at 1; 52). It repeatedly uses the term "JPMorgan" or "J.P. Morgan," presumably to refer to the collective set of the Defendant entities and other affiliated entities. (Dkt. 40). Defendants are on notice that they are being sued in connection with the Investment Presentation and, more generally, their marketing the Watford investment to Plaintiffs. Plaintiffs allege they spoke with "JPMorgan representatives." (Dkt. 1 Exhibit 1 at ¶ 44). At this point, Plaintiffs are not expected to be familiar with the intricacies of Defendants' interrelated corporate structures. It is understandable that they would not know whether Defendant representatives were employed by JPMorgan Chase Bank, N.A., J.P. Morgan Securities, LLC or JPMorgan Chase & Co. Based on the Investment Presentation, it is at least plausible that each Defendant was involved in the alleged misconduct.

**B. Statute of Limitations**

Although Plaintiffs do not expressly invoke the Illinois Securities Law of 1953 ("ISL"), JPMorgan argues Plaintiffs' claims are subject to and barred by the ISL's three-year statute of limitations. 815 Ill. Comp. Stat. 5/13. According to its terms, the ISL's statute of limitations applies to all claims "brought for relief under [the ISL] or

---

[2] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

6

upon or because of any of the matters for which relief is granted by" the ISL. *Id.* at 5/13(D). Thus, "claims that do not directly invoke the Securities Law may still fall within its statute of limitations." *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007). For example, in *Tregenza v. Lehman Brothers*, the Illinois Appellate Court held that common law breach of fiduciary duty, fraud, and negligent misrepresentation claims brought by a stock purchaser against the seller of that stock were subject to the ISL's three-year statute of limitations even though plaintiff did not plead a claim under the ISL because the "causes of action are reliant upon matters for which relief is granted by the Securities Law." 678 N.E.2d 14, 15 (Ill. App. Ct. 1997) (internal quotations omitted); *see also Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044-46 (7th Cir. 2019) (applying ISL's statute of limitations to common law claims of fraud, fraudulent concealment, breach of fiduciary duty, and negligent misrepresentation brought by stock purchaser against stock seller).

Plaintiffs' claims are premised on allegedly false statements regarding the profitability of Watford made by JPMorgan to induce Plaintiffs to purchase Watford stock. The Court agrees with JPMorgan that these claims are encompassed by section 12(G) of the ISL, which prohibits "obtain[ing] money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 815 Ill. Comp. Stat. 5/12(G). Plaintiffs argue that section 12(G) does not apply to their claims because JPMorgan did not sell the subject securities to Plaintiffs, Watford did. The Complaint,

7

however, alleges that JPMorgan solicited Plaintiffs' investment in Watford, which is included in the ISL's definition of a "sale." *Benjamin v. Cablevision Programming Investments*, 499 N.E.2d 1309, 1313 (Ill. 1986) ("[T]he term "sale," as used in the [ISL], encompasses not only transactions that fall within the common legal understanding of that term, but also is much broader and includes other activities which in law are recognized only as preliminary steps in the consummation of a sale, such as an offer or a solicitation of an offer."). The ISL's three-year statute of limitations thus applies to Plaintiffs' claims.[3]

The ISL's statute of limitations begins to run from the date of the sale, but if the plaintiff "neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of" the ISL, the three-year statute of limitations begins to run on the date the plaintiff had actual knowledge or "notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation …[,]" whichever is earlier. 815 Ill. Comp. Stat. 5/13(D). Plaintiffs purchased Watford stocks on February 25, 2014 but claim they only "recently discovered" the alleged misconduct. (Dkt. 1 Exhibit 1 at ¶¶ 1; 49). JPMorgan argues that Plaintiffs were aware or should have been aware much earlier that Watford would not achieve profitability, citing to allegations in the Complaint that "[s]ince commencing operations, Watford's reinsurance underwriting business has never been profitable, and in fact, has operated at a loss each year" and that the combined ratios of the company exceeded 100% in 2014-2018. (Dkt. 1 Exhibit 1 at ¶¶ 50-52). It is unclear at

---

[3] The Court need not consider whether other provisions of the ISL cover Plaintiffs' claims.

this stage whether Plaintiffs had access to this information each year or have only recently discovered that the company had historically underperformed. The Complaint does not allege what documents that information was contained in, if those documents were disseminated to investors, or if investors could have discovered that information on their own through reasonable diligence. Watford did not initiate its IPO until March 28, 2019 and documents regarding its performance may have been difficult for investors to obtain prior to that date. (*Id.* at ¶ 61). While a court may dismiss a complaint "if a plaintiff alleges facts sufficient to establish a statute of limitations defense," *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015), a plaintiff is not required to anticipate that defense and the court cannot penalize him for failure to plead facts to overcome it. *See Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) ("[I]t does not follow from the fact that a plaintiff can get into trouble by pleading more than he is required to plead that he is required to plead that more."). At this stage, the Court is required to make all permissible inferences in Plaintiffs' favor. Thus, the Court cannot conclude at this juncture that the ISL's three-year statute of limitations has run.

### C. Negligent Misrepresentation (Count I)

To state a claim for negligent misrepresentation under Illinois law, a plaintiff must allege:

> (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by defendant, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such

9

reliance, and (6) a duty owed by defendant to plaintiff to communicate accurate information.[4]

*Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 335 (7th Cir. 1999) (affirming dismissal of negligent misrepresentation where plaintiff could not show that reliance was reasonable) (quoting *Rosenstein v. Standard & Poor's Corp.*, 636 N.E.2d 665, 667 (Ill. 1993)).

Plaintiffs allege JPMorgan negligently represented that it was highly likely Watford's reinsurance business would be profitable in the early stages of Watford's business and achieve a 95% combined ratio (Dkt. 1 Ex. 1 at ¶¶ 1; 35) through statements that (a) reinsurance underwriting profits would come from a diversified and conservative portfolio with a "focus on specialty lines" and Arch's "disciplined approach to underwriting" (*Id.* at ¶¶ 41-42); (b) Arch was a leader in reinsurance "with a long history of profitable underwriting" outperforming its peer group (*Id.* at ¶¶ 39-40); and (c) an IPO would be offered in 2-3 years (*Id.* at ¶ 43). Plaintiffs allege "it was highly unlikely, if not impossible, that the reinsurance business would be profitable during the early stages of Watford's business" because of structural realities. (*Id.* at ¶ 69).

---

[4] JPMorgan relies on the CPPM and the Subscription Agreement to argue that Plaintiffs fail to allege reasonable reliance. (Dkt. 19 at 5-8). Defendants are correct, and Plaintiffs do not dispute, that documents so central to the Complaint may be considered on a motion to dismiss even if not attached to the Complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir.2002). These documents do contain express provisions that Plaintiffs are not relying upon the "views or advice of … JPMorgan or their affiliates" in investing in Watford. (Dkt. 19 at 6). However, this early in the case, with all inferences drawn in favor of Plaintiffs, the Court will not interpret the various provisions of CPPM and the Subscription Agreement. Plaintiffs, of course, do have the burden of establishing reliance going forward.

JPMorgan argues that Plaintiffs have failed to allege a false statement of material fact on which they justifiably relied, because the alleged misrepresentations are not statements of fact, but rather nonactionable forward-looking projections and opinions about Watford's profitability. *See e.g.*, *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 273 (Ill. App. Ct. 2015) ("[P]rojections of future performance are generally not actionable as false statements, because they are considered opinions rather than statements of present or preexisting fact.").

Plaintiffs do not respond to the fact that statements about future performance are not actionable. Instead, Plaintiffs assert that they "are not complaining that a target was not achieved" or "about whether Watford's results matched up with JPMorgan's projections." (Dkt. 23 at 10). Rather, Plaintiffs assert that "the Complaint is concerned with Watford's *own belief* about the likelihood of early reinsurance profitability" and "JPMorgan['s] misrepresent[ation] that Watford expected that it would experience early underwriting profits, when in fact Watford's understanding was the opposite." (*Id.* at 10-11) (emphasis added). This theory of relief articulated in Plaintiffs' response brief, however, is unsupported by any allegations in the Complaint. Plaintiffs' Complaint is premised on allegations regarding representations JPMorgan made about the profitability of the Watford investment—not representations about Watford's beliefs.

To be clear, to the extent Plaintiffs base their claim of negligent misrepresentation on statements regarding Watford's anticipated profitability, the claim must be dismissed because statements about the "likelihood that Watford

11

would generate reinsurance underwriting profits in the early stages" are nonactionable forward-looking statements and projections. (Dkt. 1 Exhibit 1 at ¶ 68-70); *Avon Hardware Co. v. Ace Hardware Corp.,* 998 N.E.2d 1281, 1288 (Ill. App. Ct. 2013) (negligent misrepresentation must be based on "a statement of fact not an expression of opinion"); *Abazari,* 40 N.E.3d at 273. Plaintiffs do not dispute this, arguing instead, that their claims are not based on such statements.

Plaintiffs allegations assert a cause of action based on JPMorgan's statements regarding the likelihood that Watford would be profitable, rather than on JPMorgan's statements regarding Watford's beliefs about its venture. Although Plaintiffs allege in a single sentence of the Complaint that "contrary to JPMorgan's representations, Watford never anticipated that its reinsurance business would be profitable in the early stages of its business[,]" (*id.* at ¶ 1), this allegation is unsupported by facts. Plaintiffs may base this assertion on a 2016 presentation given by Watford's CEO in which he "commented that Watford would not be able to meets its target combined ratio of 95%" because "the start-up costs of a reinsurance firm and the legal reserve requirements made a combined ratio of 95% highly unlikely, if not impossible to achieve." (*Id.* at ¶ 55). But this allegation does not mean that Watford's CEO did not believe it would be profitable at the time JPMorgan made the alleged misrepresentations two years prior in 2014. Thus, Plaintiffs have failed to adequately allege a claim of negligent misrepresentation based on its theory that JPMorgan negligently failed to disclose that *Watford did not believe* it would be profitable early on.

12

**D. Breach of Fiduciary Duty (Count II)**

Under Illinois law, to state a claim for breach of fiduciary duty Plaintiffs must allege: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 433 (Ill. 2012). JPMorgan argues that Plaintiffs fail to adequately allege that it owed Plaintiffs a fiduciary duty. Plaintiffs assert that "JPMorgan's fiduciary duties … stem from providing investment advice to Plaintiffs …." (Dkt. 23 at 13).

An investment advisor is not, as a matter of law, a fiduciary of his advisee. *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (discussing Illinois law).[5] A fiduciary duty may arise in such a relationship, however, if the advisee places "trust and confidence in" the advisor so that the advisor "gains influence and superiority over" the advisee. *Id.* (internal quotations omitted); *Santa Claus Indus., Inc. v. First Nat. Bank of Chicago,* 576 N.E.2d 326, 331 (Ill. App. Ct. 1991). A "slightly dominant business position" is insufficient to establish a fiduciary duty; rather, there must be "a *significant* degree of dominance and superiority of one party over another." *Lagen v. Balcor Co.*, 653 N.E.2d 968, 975 (Ill. App. Ct. 1995) (emphasis added). Where a fiduciary duty does not arise as a matter of law, plaintiff has the burden to plead and

---

[5] Plaintiffs cite *Van Dyke v. White*, 131 N.E.3d 511, 530-31 (Ill. 2019) for the proposition that "an investment adviser role gives rise to a fiduciary relationship as a matter of law." (Dkt. 23 at 14) But *Van Dyke* considered whether Plaintiff was an investment advisor as defined by the ILS. *Id.* Finding that he fit the statutory definition, the court concluded he owed a fiduciary duty under Section 12(J) of the ILS. *Id.* at 531. The Court did not consider whether the investment advisor-advisee relationship gave rise to a fiduciary duty under Illinois common law.

13

prove the existence of fiduciary duty by clear and convincing evidence. *Magna Bank of Madison Cty. v. Jameson*, 604 N.E.2d 541, 544 (Ill. App. Ct. 1992).

Plaintiffs have not done so here. Plaintiffs claim they "placed trust and confidence in JPMorgan" and that "JPMorgan gained influence and superiority over Plaintiffs as a result of their relationship[,]" but allege no facts to support such conclusory allegations. (Dkt. 1 Exhibit 1 at ¶¶ 77; 79). They do not allege any special circumstances indicating JPMorgan had a significant degree of dominance, control, influence, or superiority over them. Plaintiffs allege JPMorgan marketed itself as providing "best-in-class service," (*id.* at ¶ 14), and advice to its clients regarding investments, but Plaintiffs, affiliates of an investment management firm, also had experience in investing and did not wholly entrust JPMorgan to invest on their behalf. This is not the sort of disparity in sophistication or in expertise that would give rise to a fiduciary relationship. *See Burdett*, 957 F.2d at 1381 (fiduciary duty exists where a party "represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him[.]"); *Ruderman v. Bank of Am., N.A.*, No. 10-CV-6153, 2011 WL 2149630, at *6 (N.D. Ill. June 1, 2011) (finding fiduciary duty between investment advisor and advisee where advisee entrusted funds to advisor to invest on her behalf and advisee lacked knowledge and experience in investing); *Ogdon v. Hoyt*, No. 04 C 2412, 2004 WL 1610973, at *4 (N.D. Ill. July 19, 2004) (no fiduciary duty exists where both parties

14

are sophisticated). Because Plaintiffs fail to adequately allege the existence of a fiduciary duty, this claim is dismissed.[6]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.

E N T E R:

Dated: September 16, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[6] Plaintiffs claim in their response brief that their theory of breach of fiduciary duty is premised on JPMorgan's failure to "inform Plaintiffs of Watford's expectation as to the profitability of the reinsurance side of the business." (Dkt. 23 at 14). Once again, Plaintiffs' Complaint fails to reflect that theory. The Complaint alleges that "JPMorgan breached its fiduciary duties by presenting to Plaintiffs that there was a high likelihood that Watford's reinsurance business would be profitable during the early stages of Watford's business, when in fact, it was highly unlikely, if not impossible, that Watford's reinsurance business would be profitable …." (Dkt. 1 Exhibit 1 at ¶ 81). Thus, the Complaint states a claim based on JPMorgan's statements regarding Watford's profitability, rather than on JPMorgan's statements regarding Watford's expectations of profitability.